### STATE OF NORTH CAROLINA v. JESSE HARVEY, JR.

#### No. 51

#### (Filed 12 April 1972)

**1. Indictment and Warrant § 6— arrest warrant — probable cause**

The Fourth Amendment requirement that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the persons or things to be seized, applies to arrest warrants as well as to search warrants.

**2. Indictment and Warrant § 6— arrest warrant — probable cause**

The judicial officer issuing an arrest warrant must be supplied with sufficient information to support an independent judgment that there is probable cause for issuing the warrant.

**3. Indictment and Warrant § 6— arrest warrant — probable cause**

The same probable cause standards under the Fourth and Fourteenth Amendments apply to both federal and state warrants. G.S. 15-27.

**4. Indictment and Warrant § 6— probable cause — reliable informant**

Information received from a reliable informant is sufficient to support a conclusion that probable cause for arrest exists.

**5. Indictment and Warrant § 6— probable cause — S.B.I. agent's testimony — information from another S.B.I. agent**

S.B.I. agent's affidavit and testimony before a magistrate that another S.B.I. agent had purchased heroin from defendant furnished sufficient evidence to support the magistrate's determination that probable cause existed for defendant's arrest.

**6. Arrest and Bail § 5— erroneous identification of defendant — arrest under warrant**

Although defendant had been erroneously identified as the person who sold heroin to an S.B.I. agent, defendant's arrest under a warrant

charging the sale of heroin to the S.B.I. agent was lawful where the warrant was issued by a magistrate, in compliance with his duty, upon a complaint which furnished him probable cause to believe that the crime charged had been committed by defendant.

7. **Arrest and Bail § 5— arrest under warrant — forcible entry — demand for and denial of entry**

There was sufficient compliance with the requirement that entrance be demanded and denied before a police officer can forcibly enter a dwelling for the purpose of making an arrest, where defendant had observed the officer's uniform and was aware of his official status, the officer had seen defendant looking out a door and knew that defendant had observed him, and the officer twice called out defendant's name and received no reply before he opened the door to defendant's residence.

8. **Constitutional Law § 21; Criminal Law § 84; Searches and Seizures § 1— seizure without a warrant — articles in plain view**

The constitutional guaranty against unreasonable searches and seizures does not apply where a search is not necessary, and where the contraband matter is fully disclosed and open to the eye and hand.

9. **Criminal Law § 84; Searches and Seizures § 1— lawful entry into home — seizure without warrant — articles in plain view — absence of exploratory search**

Where a police officer lawfully entered defendant's home to serve a valid arrest warrant, the officer did not need a search warrant to seize marijuana seeds lying in plain view on the top of a freezer some three or four feet from the officer or to seize marijuana which the officer saw inside a plastic jar that he picked up to use as a container for the seized marijuana seeds, no warrant being necessary for the seizure of articles in plain view, and the marijuana in the plastic jar not being discovered by a general exploratory search or an unreasonable search.

10. **Narcotics § 4— possession defined**

One has possession of narcotics within the meaning of the law when he has both the power and intent to control its disposition or use.

11. **Narcotics § 4— possession — premises controlled by accused**

The fact that narcotics are found on premises under the control of the accused raises an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.

12. **Narcotics § 4— possession — defendant's proximity to narcotics**

The State may overcome a motion to dismiss or motion for judgment as of nonsuit in a prosecution for possession of narcotics by presenting evidence which places the accused within such close juxtaposition to the narcotics as to justify the jury in concluding that they were in his possession.

State v. Harvey

**13. Narcotics § 4— possession — marijuana in defendant's home**

The State's evidence was sufficient to support a reasonable inference that marijuana was in defendant's possession where it placed defendant within three or four feet of marijuana lying on top of a freezer and marijuana in a plastic jar in defendant's home, and no one else was in the room where the marijuana was found.

**14. Criminal Law § 115— necessity for submitting lesser offense**

The court is not required to submit to the jury the question of defendant's guilt of a lesser degree of the crime charged in the indictment when the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged.

**15. Narcotics § 4.5— felonious possession of marijuana — failure to submit misdemeanor**

In a prosecution for the felony of possession of more than one gram of marijuana, the trial court did not err in failing to submit the misdemeanor of possession of less than one gram of marijuana, where all the evidence relating to the quantity of marijuana shows that defendant possessed more than one gram of marijuana.

**16. Statutes § 5— legislative intent**

In seeking to discover and give effect to the legislative intent, an act must be considered as a whole, and none of its provisions shall be deemed useless or redundant if they can reasonably be considered as adding something to the act which is in harmony with its purpose.

**17. Narcotics § 5; Criminal Law § 138— possession of marijuana — punishment statute changed pending defendant's appeal**

A defendant whose appeal from conviction of possession of more than one gram of marijuana was pending on 1 January 1972, the effective date of the act reducing that crime from a felony to a misdemeanor and reducing the maximum punishment for a first offense of possession of any quantity of marijuana to six months, is not entitled to the benefit of the more lenient punishment provisions of the new act, since the new act contains savings clauses providing that prosecutions for violations of law occurring prior to its effective date shall not be affected and that its provisions shall be applicable to violations of law which occur following 1 January 1972.

APPEAL by defendant pursuant to G.S. 7A-30(1) from decision of the North Carolina Court of Appeals, 13 N.C. App. 433, finding no error in the trial before *Rouse, J.,* at 24 May 1971, Session of BEAUFORT Superior Court.

Defendant was charged in a bill of indictment with unlawful possession of marijuana in excess of one gram. When the case came on for trial, defendant entered a plea of not guilty and, after the jury was duly empaneled, he moved to suppress

the marijuana from evidence. The court, on voir dire, heard evidence from both the State and defendant.

On voir dire, S.B.I. Agent Thomas W. Caddy testified that on 15 March 1971 he went before Magistrate W. T. Stowe for the purpose of obtaining an arrest warrant for Jesse Harvey, Jr. Agent Caddy testified under oath before the magistrate that on or about 23 January 1971 Special Agent E. H. Cross, Jr., of the State Bureau of Investigation, had purchased 16 bindles of heroin from Jesse Harvey, Jr. He stated that he told the magistrate he had received the information concerning the sale of heroin through Agent Cross. Based on the sworn testimony of Agent Caddy, the magistrate issued a warrant for the arrest of Jesse Harvey, charging him with unlawful sale of the narcotic drug, heroin.

At the time the warrant was obtained, Agent Cross was out of the county.

Deputy Sheriff Randy Respass testified that he went to the home of Jesse Harvey on 16 March 1971 for the purpose of serving the arrest warrant. He observed Jesse Harvey looking out the door of the utility room. Deputy Respass approached that door and twice called defendant's name. When he received no reply he opened the utility door about twelve inches and again called defendant's name. At this time defendant answered, "yes," and Respass observed him standing behind the door approximately three or four feet from a chest-type deep freezer located in the utility room. Deputy Respass opened the door wider and defendant came towards him. While standing in the doorway, he read the warrant to Harvey. At that time Deputy Sheriff Respass could see the top of the deep freezer, and he observed seed which he recognized as marijuana seed lying on top of the deep freezer. After handcuffing Harvey, Respass went into the utility room and gathered up the marijuana seed with his hands. He then picked up a plastic jar located adjacent to the deep freezer and poured the seed into the plastic jar. When he was in the act of pouring the seed into the jar, he observed more marijuana seed and some vegetable matter in the jar.

W. H. Thompson, with the State Bureau of Investigation, testified that on 23 January 1971 he was with Agent Cross when he made a purchase of sixteen bindles of heroin. He stated

that he saw the entire transaction, and the person who sold the heroin to Agent Cross was not defendant Jesse Harvey, Jr.

Defendant testified that Deputy Sheriff Respass came to his residence around 10 or 10:30 o'clock on the evening of 16 March, 1971, and at that time he (Harvey) was in the storage room of the house. He heard an automobile door slam and saw Deputy Sheriff Respass (wearing his uniform) approaching the porch. Defendant further testified that when the deputy called his name, he immediately left the storage room and closed the door behind him. He was arrested and handcuffed at that time. He stated there were no marijuana seeds loose on the freezer chest and that they were all in the jar; and that Deputy Sheriff Respass did not go into the storage room until after defendant had been arrested and handcuffed.

At the close of the evidence Judge Rouse entered an order in which he found facts, which were substantially supported by the testimony of the two S.B.I. agents, and entered an order concluding and adjudging:

I. That the affidavit and information furnished by the officer to the magistrate was sufficient as a basis for the issuance of a valid warrant.

II. That the entry into the home of the defendant under the circumstances of this case was with a reasonable belief that the defendant was present and had failed to respond after having been called and was, therefore, not illegal.

III. That the contraband which is the subject of this action was in plain view and was, therefore, not discovered through an illegal search.

IV. That if it should be construed that the contraband was discovered by search, then the Court concludes that it was a lawful search, incident to a lawful arrest.

It is, therefore, ORDERED AND ADJUDGED that the Motion to Suppress be and the same is hereby DENIED.

The jury returned to the courtroom and Deputy Sheriff Respass testified to substantially the same facts as on voir dire.

The State then offered the testimony of Phil Williamson, found by the court to be an expert in forensic chemistry, who

testified that he had analyzed the contents of State's Exhibit No. 4 and had found that it consisted of two grams of marijuana seed and .2 of one gram of marijuana leaf fragments and flowering top parts. The State elicited other testimony showing that State's Exhibit No. 4 was the seed and vegetable matter taken from Jesse Harvey's home on 16 March 1971.

The record discloses that the State took a nol pros on the original charge of illegal sale of heroin.

Defendant offered no evidence before the jury.

The jury returned a verdict of guilty of the offense of possession of marijuana of more than one gram. Defendant appealed from judgment imposing a sentence of imprisonment of not less than one nor more than three years.

*Attorney General Morgan, Chief Deputy Attorney General McGalliard, Associate Attorney Ann Reed, and Associate Attorney Poole for the State.*

*Paul & Keenan, by James E. Keenan, for defendant.*

BRANCH, Justice.

Defendant contends that the trial judge erred in denying his motion to suppress the evidence seized from defendant's premises. Defendant first argues that there was no probable cause shown to the magistrate for issuance of the warrant.

[1-3] The Fourth Amendment requirement that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the persons or things to be seized, applies to arrest warrants as well as to search warrants. The judicial officer issuing such warrant must be supplied with sufficient information to support an independent judgment that there is probable cause for issuing the arrest warrant. *Giordenello v. United States,* 357 U.S. 480, 2 L. ed 2d 1503, 78 S.Ct. 1245. The same probable cause standards under the Fourth and Fourteenth Amendments apply to both federal and state warrants. G.S. 15-27; *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755; *Ker v. California,* 374 U.S. 23, 10 L. ed 2d 726, 83 S.Ct. 1623; *Mapp v. Ohio,* 367 U.S. 643, 6 L. ed 2d 1081, 81 S.Ct. 1684.

---

**State v. Harvey**

---

This Court dealt with determination of probable cause relating to issuance of search warrants in the case of *State v. Vestal, supra,* and there stated:

"In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L. ed 2d 723, the Supreme Court of the United States dealt with questions concerning the Fourth Amendment requirements for obtaining a valid state search warrant. It said:

'[W]hen a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing court will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant." * * * and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude that [the articles searched for] were probably present." * * *

'Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 4 L. ed 2d 697, 80 S.Ct. 725, 78 A.L.R. 2d 233, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [articles to be searched for] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was "credible" or his information "reliable." ' "

[4] More specifically considering arrest warrants, the courts hold that information received from a reliable informant is sufficient to support a conclusion that probable cause for *arrest* exists. *Draper v. United States,* 358 U.S. 307, 3 L. ed 2d 327, 79 S.Ct. 329; *Ker v. California, supra; McCray v. Illinois,* 386 U.S. 300, 18 L. ed 2d 62, 87 S.Ct. 1056.

In support of his contention, defendant relies heavily upon the case of *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. 560, 28 L. ed 2d 306, 91 S.Ct. 1031. There, the officer's complaint upon which the warrant for arrest was issued stated:

" 'I, C. W. Ogburn, do solemnly swear that on or about the 23 day of November, A. D. 1964, in the County of Carbon and State of Wyoming, the said Harold Whiteley and Jack Daley, defendants did then and there unlawfully break and enter a locked and sealed building [describing the location and ownership of the building].' "

The Court there, in holding that the judicial officer was not supplied with sufficient information to support an independent judgment that probable cause existed, in part said:

" . . . [T]he sole support for the arrest warrant issued at Sheriff Ogburn's request was the complaint reproduced above. That complaint consists of nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense described in the complaint. The actual basis for Sheriff Ogburn's conclusion was an informer's tip, but the fact, as well as every other operative fact, is omitted from the complaint. Under the cases just cited, that document alone could not support the independent judgment of a disinterested magistrate."

The complaint for arrest upon which the warrant was issued in the case before us for decision avers: " . . . that at and in the County named above and on or about the 23 day of January, 1971, the defendant named above did unlawfully, wilfully and feloniously sell to S.B.I. Agent, E. H. Cross, Jr., a narcotic drug in violation of the Uniform Narcotic Drug Act. The drug in question consisted of sixteen (16) bindles of heroin."

The present case, unlike *Whiteley,* shows ample basis for issuance of the arrest warrant upon information from a credible source.

This Court has held that a police officer making the affidavit for issuance of a warrant may do so in reliance upon information reported to him by other officers in the performance of their duties. *State v. Vestal, supra; State v. Banks,* 250 N.C. 728, 110 S.E. 2d 322.

[5]   Here, S.B.I. Agent Caddy relied upon information received through S.B.I. Agent Cross while in the performance of his duties. The evidence that Agent Cross purchased heroin from the accused furnished sufficient evidence that probable cause

for defendant's arrest existed. The very relation shown to exist between S.B.I. Agent Cross and the affiant (S.B.I. Agent Caddy) was sufficient evidence of circumstances upon which the affiant could conclude that the information furnished to the magistrate was credible and reliable.

**[6]**   We must consider the fact that the warrant executed by Deputy Sheriff Respass was mistakenly issued for defendant.

5 Am. Jur. 2d, Arrest, § 4, p. 699, states:

> When a warrant, valid in form and issued by a court of competent jurisdiction, is placed in the hands of an officer for execution, it is his duty to carry out its demands without delay, and he incurs no liability for its proper execution, however disastrous may be the effect on the person against whom it is issued. If it is regular on its face, he is bound to serve it, and failure to do so would be disobedience of a lawful court order, punishable as contempt.

In the case of *Hill v. California,* 401 U.S. 797, 28 L. ed 2d 484, 91 S.Ct. 1106, the police had probable cause to believe that Hill had been implicated in a robbery and that the fruits of the crime were located in his apartment. They proceeded to his apartment, and when they arrived they found the door open and a man answering his description in the apartment. They thereupon arrested the occupant of the apartment despite his protestations that he was not Hill. They then proceeded to search the apartment. Sustaining the arrest as valid and holding the search legal as incident to the arrest, the Court stated:

> " . . . '[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.' . . . The upshot was that the officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time."

We recognize that the facts in *Hill* differ from those in this case, in that in *Hill* the person arrested was not the accused against whom the evidence was offered. However, we think that the controlling principles of sufficient probability and reasonableness are applicable and controlling in both cases.

Here, the officer, as he was required to do, executed the warrant, valid on its face. The warrant was issued by a magistrate, in compliance with his duty, upon a complaint which furnished him probable cause to believe that the crime charged had been committed by defendant. The arrest was a valid arrest.

Defendant further supports his motion to suppress with the argument that Deputy Sheriff Respass illegally entered his home to make the arrest.

G.S. 15-44 provides:

> If a felony or other infamous crime has been committed or a dangerous wound has been given and there is reasonable ground to believe that the guilty person is concealed in a house, it shall be lawful for any sheriff, coroner, constable, or police officer, admittance having been demanded and denied, to break open the door and enter the house and arrest the person against whom there shall be such ground of belief.

[7] Defendant argues that the officer's failure to knock, disclose his identity, his authority, and his mission brings the facts of this case within the holdings of *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897, and *State v. Covington*, 273 N.C. 690, 161 S.E. 2d 140.

In *State v. Sparrow, supra,* it is stated:

> "Ordinarily, a police officer, absent invitation or permission, may not enter a private home to make an arrest or otherwise seize a person unless he first gives notice of his authority and purpose and makes a demand for and is refused entry."

The Court considered the same question in *State v. Covington, supra.* There police officers, without a search warrant, forcibly entered a motel room and arrested the defendant. The officers had grounds reasonably to believe that he had committed a felony, but had not first demanded and been denied

admittance. The Court, holding the entry to be unlawful and articles seized as a result of the unlawful entry to be inadmissible in evidence, stated:

> " . . . Under G.S. 15-44 admittance, in the absence of hostile action from inside the dwelling prior to such demand, must be 'demanded and denied' before a forcible entry is lawful where, as here, there is neither a search warrant nor a warrant for the arrest of an occupant or supposed occupant. Indeed, *State v. Mooring,* 115 N.C. 709, 20 S.E. 182, seems to support the view that this requirement would apply even though the officers have a search warrant or warrant of arrest. See 15 N.C.L.R. 101, 125. Compliance with this requirement serves to identify the official status of those seeking admittance. The requirement is for the protection of the officers as well as for the protection of the occupant and the recognition of his constitutional rights."

It is of interest to note that in his voir dire testimony defendant Harvey stated that the officer made no entry into the house prior to the arrest.

[7] The State's evidence showed that Deputy Sheriff Respass "twice called out" in lieu of knocking, before opening the door. Defendant had observed his uniform and was aware of his official status. The officer knew that defendant had observed him and was therefore justified in proceeding to open the door. Under the circumstances of this case there was sufficient compliance with the rationale of *Sparrow* and *Covington,* to the effect that entrance must be demanded and denied before a police officer can proceed to forcibly enter a dwelling for the purpose of making an arrest.

We hold that Deputy Sheriff Respass legally entered defendant's premises.

Defendant further contends that the marijuana was obtained by an illegal search and seizure.

[8] The constitutional guaranty against unreasonable searches and seizures does not apply where a search is not necessary, and where the contraband subject matter is fully disclosed and open to the eye and the hand. *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28; *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376; *State v. Giles,* 254 N.C. 499, 119 S.E. 2d 394.

Deputy Sheriff Respass testified:

> "I read the warrant to Mr. Jesse Harvey and told him what it was for and when he came out of the doorway I saw marijuana seed on the deep freeze. . . . They were three or four feet away from me."

[9] Obviously, the seizure of the marijuana seed comes squarely within the "plain view" doctrine set out in *State v. Virgil, supra.* Nor do we think there was a general exploratory search or unreasonable search when the officer saw marijuana inside a plastic jar which he had picked up to use as a container for the seized marijuana seed. Officer Respass was legally on the premises, and no search was required to discover the contraband material. There was sufficient evidence to support the trial judge's findings, and the findings in turn support his conclusions of law and ruling.

We hold that the court properly overruled the motion to suppress.

Defendant assigns as error the trial court's denial of his motion to dismiss. He argues that the State failed to offer substantial evidence that he was in possession of the marijuana.

> "As used in G.S. 15-173, there is no difference in legal significance between a motion 'to dismiss the action' and a motion 'for judgment as in case of nonsuit.' The question presented by defendant's motion to dismiss was whether the evidence was sufficient to warrant its submission to the jury and to support a verdict *of guilty of the criminal offense charged in the indictment."* State v. Cooper, 275 N.C. 283, 167 S.E. 2d 266.

[10-12] An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power and intent to control its disposition or use. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. Also, the State may overcome a motion to dismiss or motion for judgment as of nonsuit by presenting evidence which places the accused "within such close juxtaposition to the narcotic drugs as to

justify the jury in concluding that the same was in his possession." *State v. Allen,* 279 N.C. 406, 183 S.E. 2d 680; *State v. Fuqua,* 234 N.C. 168, 66 S.E. 2d 667; *Hunt v. State,* 158 Tex. Crim. 618, 258 S.W. 2d 320; *People v. Galloway,* 28 Ill. 2d 355, 192 N.E. 2d 370.

[13]   In this case the State's evidence placed defendant within three or four feet of the marijuana within his home. No one else was in the room. This evidence supports a reasonable inference that the marijuana was in defendant's possession.

The trial judge correctly overruled defendant's motion to dismiss.

Defendant contends that the court erred in failing to instruct the jury that it could return a verdict of misdemeanor possession of marijuana.

Under the law as it existed at the time of defendant's trial he would have been guilty of a misdemeanor had he possessed only one gram, or less, of marijuana. G.S. 90-88; G.S. 90-111.

In the case of *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535, it is stated:

> "It is also well recognized in North Carolina that when a defendant is indicted for a criminal offense he may be convicted of the offense charged or of a lesser included offense when the greater offense in the bill contains all the essential elements of the lesser offense, all of which could be proved by proof of the allegations of fact contained in the indictment. . . . Further, when such lesser included offense is supported by some evidence, a 'defendant is entitled to have the different views arising on the evidence presented to the jury upon proper instructions, and an error in this respect is not cured by a verdict finding the defendant guilty of a higher degree of the same crime . . . . ' When there is evidence to support the milder verdict, the Court must charge upon it even when there is no specific prayer for the instruction."

[14]   Equally well recognized is the rule that the court is not required to submit to the jury the question of defendant's guilt of a lesser degree of the crime charged in the indictment when the State's evidence is positive as to each and every element of

the crime charged and there is no conflicting evidence relating to any element of the charged crime. *State v. Flippin,* 280 N.C. 682, 186 S.E. 2d 917; *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194; *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513; *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545.

[15] All the evidence in this case relating to quantity of marijuana shows that defendant possessed more than one gram of the contraband material. Defendant tried unsuccessfully by cross-examination to elicit evidence showing a lesser amount. Thus, there was no error in the failure of the trial judge to submit and charge on the lesser offense of misdemeanor possession of marijuana.

Finally, we consider defendant's contention that he is entitled to be resentenced under the more lenient penalties for possession of marijuana prescribed by the North Carolina Controlled Substances Act effective 1 January 1972.

The 1971 General Assembly enacted the North Carolina Controlled Substances Act. We quote pertinent portions of the Act.

"§90-94. Schedule VI controlled substances.

The following controlled substances are included in this Schedule:

1. Marihuana.

. . . .

"§90-95. Violations, penalties.— (a) Except as authorized by this Article, it shall be unlawful for any person:

(1) to manufacture, distribute or dispense or possess with intent to distribute a controlled substance listed in any schedule of this Article;

. . . .

(3) to possess a controlled substance included in any schedule of this Article;

(b) Any person who violates G.S. 90-95(a)(1) or G.S. 90-95(a)(2) shall be guilty of a felony and shall be sentenced to a term of imprisonment of not more than five-

years or fined not more than five thousand dollars ($5,000), or both in the discretion of the court. . . .

. . . .

(e) Any person who violates G.S. 90-95(a)(3) with respect to controlled substances included in Schedules V and VI of this Article shall, for the first offense, be guilty of a misdemeanor and be sentenced to a term of imprisonment of not more than six months or fined not more than five hundred dollars ($500.00). . . .

(f) Possession by any person of controlled substances included in any Schedule of this Article in violation of G.S. 90-95(a)(3) shall be presumed to be possession of such substances for purpose of violating G.S. 90-95(a)(1) in the following cases:

. . . .

(3) possession of more than 5 grams of marijuana as controlled within Schedule VI of this Article from which the resin has not been extracted, or possession of more than one gram of the extracted resin thereof and every salt, compound, derivative, mixture or preparation of such resin, or possession of more than one one-hundredth gram of tetrahydrocannabinols.

. . . .

"§ 90-113.7 Pending proceedings.— (a) Prosecution for any violation of law occurring prior to January 1, 1972 shall not be affected by these repealers, or amendments, or abated by reason thereof.

(b) Civil seizures or forfeitures and injunctive proceedings commenced prior to January 1, 1972 shall not be affected by these repealers, or amendments, or abated by reason thereof.

(c) All administrative proceedings pending on January 1, 1972 shall be continued and brought to final determination in accord with laws and regulations in effect prior to January 1, 1972. Such drugs placed under control prior to January 1, 1972 which are not included within Schedules I through VI of this Article shall automatically be controlled and listed in the appropriate schedule.

(d) The provisions of this Article shall be applicable to violations of law, seizures and forfeiture, injunctive proceed-

ings, administrative proceedings, and investigations which occur following January 1, 1972."

The possession of marijuana by an unlicensed person remains a crime under the Controlled Substances Act. However, the provisions of this Act reduce the mere possession of marijuana in any amount to a misdemeanor, punishable, on first offense, by imprisonment of not more than six months or a fine of not more than $500. Under this act possession of more than five grams of marijuana creates a presumption that the possession is for the purpose of distribution in violation of G.S. 90-95(a)(1).

There is a line of cases in North Carolina which hold that when there is an express and unqualified repeal of a statute after a crime has been committed—but before final judgment (even after conviction)—no punishment can be imposed under the provisions of the repealed statute. A judgment is not final as long as the case is pending. *State v. McCluney,* 280 N.C. 404, 185 S.E. 2d 870; *State v. Bryant,* 280 N.C. 407, 185 S.E. 2d 854; *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765; *State v. Pardon,* 272 N.C. 72, 157 S.E. 2d 698; *State v. Williams,* 97 N.C. 455, 2 S.E. 55.

We note that none of the statutes considered in the above cited cases had a savings clause directed to violations committed prior to the repeal, or to prosecutions pending at the time of the repeal.

Thus, the pendency of this case on appeal poses the question of whether the defendant is subject to the felony punishment pursuant to the act under which he was convicted and sentenced, or whether he is subject to lesser punishment under the Controlled Substances Act.

The case of *State v. Perkins,* 141 N.C. 797, 53 S.E. 735, considered the effect of a statutory change in punishment before final judgment in a criminal trial. There, defendant appealed from convictions of possession of liquor for sale without a license and unlawful sale of liquor, pursuant to Ch. 434 of the Laws of 1903. The offenses were allegedly committed in 1904, and in 1905, prior to defendant's trial, the General Assembly increased the penalty for the two offenses. On appeal, defendant contended that the legislative change in penalty repealed the 1903 act and barred the prosecution against him.

The Court, in holding that there was no repeal of the 1903 act by the enactment of the later statute, set forth the above stated rule followed in *McCluney, Bryant, Spencer, Pardon* and *Williams,* and further said:

"... The rule is so familiar and well grounded in reason that we need not stop to discuss it further, except to say that it necessarily relates to an unqualified and express repeal, in the view we take of it, as to its effect upon pending prosecutions for offenses committed under the prior statute before the repeal, or upon prosecutions for such offenses afterwards instituted. As thus considered, it has no application to the facts of this case, for the act of 1905 does not expressly and unqualifiedly repeal the act of 1903, but repeals only to the extent that it conflicts with it. If the Legislature had intended to repeal the act of 1903 absolutely it was easy to have expressed that intention in words of unmistakable meaning; but it preferred not to do so, but to repeal it only so far as it is repugnant to the provisions of the later statute. The act of 1905 is by its very language prospective in its operation. It refers to sales made after 1 June, 1905, when it became effective, and could not under our Constitution apply to antecedent acts, so as to make them criminal or punishable if not so at the time they were committed. ... Repeals by implication are not favored, and they should not be extended so as to include cases not within the intention of the Legislature. ...

. . . .

"... It can make no difference how the intention of the Legislature, that an act should have prospective operation, is expressed; whether it is done by unequivocal terms in the act, or by a proviso, or is to be gathered from its general scope and tenor, so that it appears with sufficient clearness that such is the intention. ..."

In *Perkins* this Court quoted with approval from Pegram's case, 1 Leigh (Va.) 569 (28 Va. 569) as follows:

"Although the principle is correct that *leges posteriores priores contrarias abrogant,* yet they only abrogate them from the time that the latter law is passed or goes into effect. The principle on which this rule prevails is that

the latter statute being incompatible with the former, they cannot exist together, and the latest expression of the will of the Legislature is the law. But there is no incompatibility in the statutes now under consideration. A punishment affixed to an offense prior to the first of May, 1828, is not incompatible with a different punishment, either lighter or more severe, affixed to the same offense subsequent to that date. They may well stand together. The punishment prescribed by Laws 1827-'28 being different from that prescribed by Laws 1822-'23, is certainly an implied repeal of it, as to new offenses, from the time it goes into effect; but, by the very terms of the law, the new punishment is only applied to the offenses happening *after* 1 May, 1828, leaving the old punishment to be applied to the offenses happing before that day."

In *State v. Putney,* 61 N.C. 543, the defendant was convicted of larceny of a mule. After the time of the alleged larceny, but before trial, the Legislature increased the punishment for violation of the statute. The defendant made a motion in arrest of judgment on the ground that passage of the statute increasing the penalty repealed the statute under which he was convicted. The Court entered an order allowing the motion, and the State appealed. The Court, finding error in the entry of the order, stated:

". . . But the act of 1866-1867 has no application to the case before us, because it does not repeal the old law, but is only prospective in its character and is to be read thus: If any person shall *hereafter* steal a mule, etc., he shall suffer death. All larcenies committed before that act are to be tried and punished without reference thereto."

*State v. Williams,* 192 La. 713, 189 So. 112, reflects the rule recognized in many states. There defendant was charged with the statutory felony of injuring a person by operating an automobile while intoxicated. Defendant was arrested and released on bond, and before his trial the statute under which he was indicted was repealed. The repealing act contained a proviso which stated: "This act shall in no way affect pending prosecutions in the courts of this state." The Court held that defendant could be prosecuted under the old law even though indictment had not been returned against him until after the effective date of the repealing act. The Court, in so hold-

ing, defined the word "prosecution" as follows: "A prosecution consists of the series of proceedings had in the bringing of an accused person to justice, from the time when the formal accusation is made, by the filing of an affidavit or a bill of indictment or information in the criminal court, until the proceedings are terminated." Accord: *State v. Bowles,* 70 Kan. 821, 79 P. 728; *State v. District Court,* 19 N.D. 819, 124 N.W. 417; *Sigsbee v. State,* 43 Fla. 524, 30 So. 816; *State v. Shushan,* 206 La. 415, 19 So. 2d 185.

Although we do not consider the above quoted definition of "prosecution" as determinative of the question here considered, we do think it is a correct definition and is consistent with the legislative intent expressed in the Controlled Substances Act.

In 50 Am. Jur., Statutes, § 572 at p. 571, we find the following:

§ 572. Effect of Saving Clause in Repealing Statute.—Frequently, statutes repealing statutes relating to crimes contain saving clauses as to crimes committed prior to the repeal. Where the repealing statute contains a saving clause as to crimes committed prior to the repeal, or as to pending prosecutions, the offender may be tried and punished under the old law. In such case, the crime is punishable under the old statute although no prosecution is pending at the time the new statute goes into effect.

This Court has consistently re-affirmed the cardinal rule of statutory interpretation as stated in *State v. Spencer, supra:*

"In construing the language of a statute we are guided by the primary rule that the intent of the legislature controls. 'In the interpretation of statutes, the legislative will is the all important or controlling factor. Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law. The legislative intent has been designated the vital part, heart, soul, and essence of the law, and the guiding star in the interpretation thereof.' 50 Am. Jur., Statutes § 223. . . ."

[16] In seeking to discover and give effect to the legislative intent, an act must be considered as a whole, and none of its provisions shall be deemed useless or redundant if they can rea-

sonably be considered as adding something to the act which is in harmony with its purpose. *In re Watson,* 273 N.C. 629, 161 S.E. 2d 1; *Jones v. Board of Education,* 185 N.C. 303, 117 S.E. 37. The same criminal offenses exist under the Controlled Substances Act as existed under the former Articles 5 and 5A of Chapter 90 of the General Statutes. The provisions for punishment under the new act are different from those contained in the former act. Thus, if the saving clauses contained in G.S. 90-113.7 do not save the punishment provisions of the former act, they are useless and redundant.

[17]   The North Carolina Controlled Substances Act does not contain an express repealing clause. On the contrary, the statute expressly provides that prosecutions for violation of law occurring prior to its effective date shall not be affected. The statute further provides that its provisions *"shall* be applicable to violations of law, . . . *which occur following January 1, 1972."* (Emphasis ours.) It is perfectly apparent that the general assembly intended that the provisions of the Controlled Substances Act be prospective and effective as of 1 January 1972. Thus, the pre-existing law as to prosecution and punishment as set forth in Articles 5 and 5A, Chapter 90 of the General Statutes as written prior to 1 January 1972, remains in full force and effect as to offenses committed prior to 1 January 1972.

We have carefully examined this entire record and find no prejudicial error. The decision of the Court of Appeals is

Affirmed.