THE STATE OF NORTH CAROLINA, ON RELATION OF JAMES E. LONG, COM-
MISSIONER OF INSURANCE OF NORTH CAROLINA v. BEACON INSURANCE COM-
PANY

No. 8610SC1178

(Filed 1 September 1987)

**Insurance § 1— rehabilitation of insolvent insurance company—priority of claims—
exclusion of reinsureds**

As used in N.C.G.S. § 58-155.15(a)(3), the word "reinsurers" refers to all
parties involved in reinsurance transactions, whether as ceding insurers or as
assuming insurers. Therefore, the trial court did not err in approving a
rehabilitation plan for an insolvent insurer which excluded the claims of "rein-
sureds" from priority under N.C.G.S. § 58-155.15(a)(3) as "claims for benefits
under policies and for losses incurred" and which treated all claims growing
out of contracts of reinsurance as claims of general creditors.

APPEAL by intervenors Lancer Insurance Company and
Lancer Syndicate, Inc. from *Preston, Judge.* Order entered 24
June 1986 in Superior Court, WAKE County. Heard in the Court
of Appeals 1 April 1987.

This appeal arises from a proceeding for the rehabilitation of
Beacon Insurance Company (Beacon), an insolvent insurance com-
pany organized under the laws of North Carolina. On 20 February
1984, upon petition of the Commissioner of Insurance filed pur-
suant to provisions of Article 17A of Chapter 58 of the North
Carolina General Statutes, and with the consent of Beacon, a Con-
sent Order of Rehabilitation was entered appointing the Commis-
sioner as rehabilitator of Beacon. Subsequently, in October 1984,
the Commissioner petitioned for approval of an Interim Plan of
Rehabilitation for Beacon. The Interim Plan was approved, in-
cluding the Commissioner's recommendation with respect to the
settlement of pending litigation and the sale of a subsidiary com-
pany. The Commissioner was ordered to develop a final plan of
rehabilitation as soon as practicable.

In December 1985, a Proposed Plan for Rehabilitation was
filed with the court. The Plan contained provisions for, *inter alia,*
the payment of claims against Beacon and divided the claimants
into five classes. Classes Three and Five are the only classes per-
tinent to the issue involved in this appeal and were defined by
the Plan as follows:

3. Those persons holding a claim or a portion of a claim for benefits under policies issued by Beacon and for losses incurred, including claims of third parties under liability policies issued by Beacon, up to an amount of $300,000.00 per claim, but excluding claims of insurance pools, underwriting associations, *reinsureds or reinsurers*, claims of other insurers for subrogation, and claims of insurers for payments and settlements under uninsured and underinsured motorists coverages, shall be "Class Three Claimants";

. . .

5. General creditors and others who hold claims against Beacon, including claims of insurance pools, underwriting associations, *reinsureds or reinsurers*, the claims of other insurance companies for subrogation, and those portions of claims for benefits under policies and for losses incurred, including claims of third parties under liability policies, in excess of $300,000.00 per claim, and the claims of insurers for payments and settlements under uninsured and underinsured motorists coverages, shall constitute "Class Five Claimants." (Emphasis supplied.)

Lancer Insurance Company and Lancer Syndicate, Inc. (the Lancer companies), insurance companies organized under the laws of the State of New York and having claims against Beacon under contracts of reinsurance, filed objections to the Proposed Plan for Rehabilitation and moved to intervene. As a basis for their objections, the Lancer companies contended that insofar as the Proposed Plan purported to exclude the claims of "reinsureds" from participation as Class Three claimants, it violated G.S. 58-155.15 (a), which establishes the priority to be given claims in the distribution of assets of a domestic insurer in a delinquency proceeding. The trial court entered an order approving the Plan of Rehabilitation, including the classification of claimants as proposed by the rehabilitator. The Lancer companies appealed.

*Hunter, Wharton & Howell, by V. Lane Wharton, Jr., for plaintiff-appellee.*

*Moore, Ragsdale, Liggett, Ray & Foley, P.A., by Peter M. Foley and Kurt E. Lindquist, II, for intervenors-appellants.*

MARTIN, Judge.

The only question presented by this appeal is whether, in the distribution of Beacon's assets, the claims of other insurance companies under reinsurance contracts with Beacon are given a priority by G.S. 58-155.15(a)(3) as "claims for benefits under policies and for losses incurred," or whether such claims are to be treated as claims of general creditors. We must agree with the trial court that claims growing out of contracts of reinsurance with the insolvent insurer are entitled to no higher priority than the claims of general creditors for the purposes of G.S. 58-155.15(a).

In 1947, in order to provide protection for North Carolina policyholders and creditors in the event of the insolvency of an insurer, the North Carolina General Assembly adopted the Uniform Insurers Liquidation Act, G.S. 58-155.10 to 58-155.17. *See Ingram, Comr. of Insurance v. Reserve Insurance Co.,* 303 N.C. 623, 281 S.E. 2d 16 (1981). The Uniform Act, however, did not generally provide for priorities in the payment of claims against the insolvent insurer from its general assets. *See* G.S. 58-155.15 (1982). In 1985, the General Assembly amended G.S. 58-155.15(a) to provide for a priority in which claims will be paid from the assets of an insolvent insurer. G.S. 58-155(a) (1985 Cum. Supp.) provides:

§ 58-155.15. Priority of certain claims.

(a) The following priority of claims in the distribution of the assets of an insurer domiciled in this State is established:

(1) Claims for cost of administration and conservation of assets of the insurer.

(2) Compensation actually owing to employees other than officers of the insurer for services rendered within three months prior to the commencement of a delinquency proceeding against the insurer under this Article, but not exceeding one thousand dollars ($1,000) for each employee. In the discretion of the Commissioner, this compensation may be paid as soon as practicable after the proceeding has been commenced. This priority is in lieu of any other similar priority that may be authorized by law as to wages or compensation of those employees.

(3) Claims or portions of claims for benefits under policies and for losses incurred, including claims of third parties under liability policies, up to an amount of three hundred thousand dollars ($300,000) per claim; but excluding claims of insurance pools, underwriting associations, or reinsurers, claims of other insurers for subrogation, and claims of insurers for payments and settlements under uninsured and underinsured motorists coverages.

(4) Claims for unearned premiums.

(5) Claims of general creditors, including claims of insurance pools, underwriting associations, or reinsurers; claims of other insurers for subrogation; those portions of claims for benefits under policies and for losses incurred, including claims of third parties under liability policies, in excess of three hundred thousand dollars ($300,000) per claim; and claims of insurers for payments and settlements under uninsured and underinsured motorist coverages.

The amendment was ratified on 27 February 1985 and made effective upon ratification. 1985 Sess. Laws, c. 10. All parties agree that G.S. 58-155.15(a), as amended in 1985, applies to this case.

A contract of reinsurance is "a contract whereby one insurer for a consideration agrees to indemnify another insurer, either in whole or in part, against loss or liability, the risk of which the latter has assumed under a separate and distinct contract as insurer of a third party." 1 Couch, *Insurance 2d*, § 1.95, p. 266. Defining "reinsurers" as those insurers assuming risks ceded to them by Beacon, and "reinsureds" as those original insurers who sought indemnity by ceding to Beacon all or part of the risks against which they had insured third parties, the Lancer companies argue that the trial court erred by approving the Plan for Rehabilitation which excluded "reinsureds" as well as "reinsurers" from participation as Class Three claimants in the distribution of Beacon's assets. They contend that G.S. 58-155.15(a)(3) is clear, unambiguous and specific in excluding certain claims from the priority status which it creates, evidencing a legislative intent that only those claims be excluded. Since claims of "reinsurers" are specifically excluded by the statute, but claims of "reinsureds" are not,

appellants reason that claims of "reinsureds" should be accorded Class Three status. Our analysis of G.S. 58-155.15(a)(3) convinces us, however, that the legislature did not intend, by its use of the word "reinsurers," to describe only those insurers to whom a risk is ceded by reinsurance. Instead, we conclude that the General Assembly intended the word "reinsurers" as a comprehensive term, referring to all parties involved in reinsurance transactions, whether as ceding insurers or as assuming insurers.

The controlling principle of statutory construction is that the statute be given the meaning intended by the legislature in enacting it. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1, 25 A.L.R. 3d 1114 (1968). Where words are used which may have more than one meaning, they are to be given that meaning which will give effect to the purpose of the statute. *Fortune v. Commissioners*, 140 N.C. 322, 52 S.E. 950 (1905). None of the provisions of a statute are to be deemed useless if they can reasonably be considered as adding something to the statute which is consistent with its purpose. *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972).

Only those claimants having a claim "for benefits under policies and for losses incurred" are included in the class of claimants given a priority status by G.S. 58-155.15(a)(3). After establishing the foregoing requirement for inclusion in the class, the statute specifically excludes such claims for benefits under policies where the claims are made by "reinsurers." If "reinsurers" is construed to mean only those insurers to whom risks have been ceded, however, the exclusion becomes meaningless because, under such a definition, the only claim a reinsurer might ever have against an insolvent insurer would be to recover unpaid premiums. A reinsuring company would have no claim for benefits under a policy issued by the insolvent. We should avoid, if possible, a construction which renders the exclusion meaningless. *State v. Harvey, supra.*

If "reinsurers," as used in G.S. 58-155.15(a)(3) is accorded the comprehensive meaning which we believe the General Assembly intended it to have, the result would be the exclusion of all participants, in a reinsurance agreement from sharing the same priority status in the payment of claims against an insolvent insurer as the insurer's direct policyholders. Such a result would, in our view, be consistent with the broad public policy considera-

tions evident in statutes regulating the insurance industry. The primary purpose of such regulatory laws is protection of the insuring public, requiring that the statutes be liberally construed to achieve that purpose. *State v. Arlington*, 157 N.C. 640, 73 S.E. 122 (1911); 19 Appleman, *Insurance Law and Practice*, § 10324. Statutory regulation of the insurance industry is of vital importance to the consumer, who must rely upon the industry for protection, and yet who clearly does not have equal knowledge or resources at his disposal in his dealings with the business of insurance. *German Alliance Ins. Co. v. Lewis*, 233 U.S. 389, 58 L.Ed. 1011, 34 S.Ct. 612 (1914).

The public policy considerations favoring protection of policyholders are not as applicable, however, to the business of reinsurance. Unlike transactions between insurers and consumers, insurers who negotiate and enter into reinsurance contracts do so from a substantially more equal bargaining position. Just as there is a reduced need for protection, there is a coextensive reduction in regulation. *See, e.g.*, G.S. 58-54.21(2) (company not required to obtain certificate of authority to transact reinsurance business); G.S. 58-188 (no deposit required of fire insurance company licensed only for reinsurance business); G.S. 58-366(a) (Readable Insurance Policies Act, G.S. 58-364-372, applies only to policies of direct insurance); G.S. 58-131.36 (reinsurance excluded from insurance rates regulation). In light of the reduced protection which the General Assembly has provided for, and the reduced regulation which it has imposed upon, insurers engaged in ceding and assuming risks through the business of reinsurance, we believe it unlikely that the General Assembly intended, in the event of the insolvency of an insurer, that other insurers, who had ceded risks to the insolvent insurer through reinsurance agreements would be treated on a par with those who have claims under policies issued directly by the insolvent insurer.

An interpretation of "reinsurers" as inclusive of all parties to a reinsurance agreement would also be harmonious with other provisions of G.S. 58-155.15(a)(3) that exclude the claims of insurance pools and underwriting associations and the subrogation claims of other insurers from Class Three priority status. Each of these entities could be expected to have a claim "for benefits under policies" of insurance issued by the insolvent insurer, arising through equitable or contractual rights of subrogation or by

reason of loss on a policy issued by the insolvent insurer through a risk sharing plan where the involvent insurer is unable to pay its proportionate share of the loss. All of these claims, however, are excluded from the priority status described by subsection (a)(3), consistent with an intent by the General Assembly that claims by direct policyholders of the insolvent insurer be paid before the claims of other insurers.

We are further of the opinion that had the General Assembly intended to exclude from the priority created by G.S. 58-155.15(a) (3) only those insurers to whom risks are ceded through a contract of reinsurance, rather than all parties to a reinsurance agreement, it would have specifically so provided. The legislature is always presumed to have acted with care and deliberation. *State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970). Where it has been necessary to distinguish between the specific parties to a re-insurance contract, the General Assembly has, in other statutes, used specific terms such as "ceding insurer," "assuming insurer," or "reinsuring company." *See, e.g.*, G.S. 58-72.1, -72.2, -72.3 (1985 Cum. Supp.); G.S. 58-155.1(b) (1985 Cum. Supp.).

Finally, our conclusion that "reinsurers" was intended by the legislature as a comprehensive term, including all parties to a contract of reinsurance, is reinforced by the provisions of 1987 Sess. Laws, c. 864, enacted 14 August 1987. The legislation is entitled "An Act To Make Technical Corrections To The Insurance Law And To Assist Insureds In Replacing Coverage From Insolvent Insurance Companies" and provides, in Section 18, that: "G.S. 58-155.15(a)(3) and G.S. 58-155.15(a)(5) are each amended by substituting 'those arising out of reinsurance agreements' for 'reinsurers.'" The amendment implicitly acknowledges that the word "reinsurers" was inaptly used in the original enactment of the statute and expresses an unequivocal legislative intent that all claims arising out of contracts of reinsurance are to be excluded from the priority created by G.S. 58-155(a)(3) and are to be treated the same as claims of general creditors pursuant to G.S. 58-155 (a)(5).

The order approving the Plan of Rehabilitation for Beacon Insurance Company is affirmed.

Affirmed.

Judges ARNOLD and GREENE concur.