STATE OF NORTH CAROLINA
v.
RICHARD KEITH WARD.
No. COA08-1465
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Donald W. Laton, for the State
Charlotte Gail Blake for defendant-appellant.
JACKSON, Judge.
Richard Keith Ward ("defendant") was charged by indictment for (1) one count of manufacturing methamphetamine; (2) two counts of possession of immediate precursor chemicals with the intent to manufacture methamphetamine; (3) one count of possession of methamphetamine with intent to manufacture, sell, or deliver; and (4) one count of possession of amphetamine with intent to manufacture, sell, or deliver. He was found guilty of the lesser offense of felonious possession of methamphetamine. He was sentenced to an active term of six to eight months imprisonment. For the reasons set forth below, we hold no error.
The State's evidence tends to show that on 12 July 2006, officers of the Watauga County Sheriff's Department, including sheriff Mark Shook ("Sheriff Shook"), went to defendant's last known address, 363 Big Branch Road in the Sugar Grove community of the county, for the purpose of serving upon defendant an arrest warrant for failure to appear in court. The address had a mailbox beside the road and the name "Richard Ward" written on it. Upon arriving at this address, a single wide mobile home, the officers knocked on the door and received no answer. Sheriff Shook directed the attention of Detective Darrin Tolbert ("Detective Tolbert") to a can of camping fuel and a can of acetone lying on top of a partially-open trash bag beside the porch. Detective Tolbert looked in the trash bags and saw numerous matchbook striker plates and a bottle of Heat brand gas line antifreeze. Based upon his experience and advanced narcotics investigation training in the field of methamphetamine and other clandestine laboratories, Detective Tolbert recognized these items as "indicative of the manufacturing process of methamphetamine." Detective Tolbert left the scene, prepared an application for a search warrant, and subsequently obtained the search warrant.
Later that day, Sergeant Todd Phillips ("Sergeant Phillips"), Detective Patrick Anderson ("Detective Anderson"), and agents from the North Carolina State Bureau of Investigation ("SBI") executed the search warrant. During the search of the trash bags and trash cans, the detectives seized two empty gallon cans marked "Coleman Fuel," a plastic gallon jug of muriatic acid, four plastic twelve ounce bottles of Heat gas line antifreeze, two thirty-two ounce bottles of hydrogen peroxide, one sixteen ounce bottle of hydrogen peroxide, one homemade improvised glass beaker, one sixteen ounce bottle of pure acetone, a thirty-two ounce bottle of isopropyl alcohol, one sixteen ounce bottle of tincture of iodine, several plastic grocery bags containing matchbooks without the striker plates, detached used matchbook striker plates, several empty boxes of pseudoephedrine pills, and a homemade hydrochloride generator. All of these items are used in the manufacturing process of methamphetamine.
SBI Special Agent Jennifer Lindley ("Agent Lindley"), a forensic chemist, accompanied the detectives and other SBI agents during the search of the residence. As Agent Lindley and other SBI agents walked through the residence, they took photographs of items that consistently are used within methamphetamine laboratories or other clandestine laboratories. Within a kitchen cabinet, the detectives and agents found a quart Mason jar containing several coffee filters and a blue powder. The detectives and agents also found in the same cabinet a pint Mason jar that contained coffee filters and a white powder. In addition to various chemicals, solvents, and devices used in the production of methamphetamine, Agent Lindley found outside the house a glass jar that contained red residue and a coffee filter.
Subsequent testing confirmed that the jars with blue and white powder contained either ephedrine or pseudoephedrine, chemicals used in the manufacture of methamphetamine. The red stain residue on the coffee filter in the glass jar later was analyzed and found to contain both amphetamine and methamphetamine. Employees of two different drug stores testified that defendant purchased products containing pseudoephedrine on multiple occasions between 26 January 2006 and 29 June 2006. Each time defendant gave his address as "363 Big Branch Road, Sugar Grove, North Carolina 28679."
On 28 July 2006, Detective Anderson and Sergeant Phillips encountered defendant as he drove away from the residence at 363 Big Branch Road. The officers activated their vehicle's lights and siren. Defendant's vehicle sped away, and the officers pursued defendant. Defendant's vehicle came to an abrupt halt. Defendant exited the vehicle, ran on foot to the Watauga River, and began crossing the river. Sergeant Phillips caught up with defendant and apprehended him.
Defendant testified that he moved from the residence at 363 Big Branch Road in February 2006. With the exception of the day he was arrested, he returned to the residence one time in March 2006 for the purpose of retrieving some tools. His brother owned the mobile home, and after defendant moved out, his brother and another man moved in. They were living at the residence when defendant returned in March 2006.
Defendant further testified that he had gone to the property on 28 July 2006 to get a garden tiller that had been stored in a shed near the mobile home. He fled from the law enforcement officers because he had been driving a vehicle with an invalid registration tag and inspection and because he knew that he had failed to appear for court. He was not aware of the search of the mobile home on 12 July 2006.
At the close of the State's evidence, the trial court granted defendant's motion to dismiss one count of possession of immediate precursor chemicals with the intent to manufacture methamphetamine. The jury found defendant guilty of felonious possession of methamphetamine, a lesser included offense of possession of methamphetamine with intent to manufacture, sell, or deliver. Defendant appeals.
On appeal, defendant contends the verdict of guilty of possession of methamphetamine is inconsistent with the jury's acquittal of the charge of possession of amphetamine because the amphetamine and methamphetamine were found on the same coffee filter. We disagree.
A motion to set aside the verdict is within the sound discretion of the trial court. State v. Reaves, 132 N.C. App. 615, 624, 513 S.E.2d 562, 568, disc. rev. denied, 350 N.C. 846, 539 S.E.2d 4 (1999). "It is well established in North Carolina that a jury is not required to be consistent and that incongruity alone will not invalidate a verdict." State v. Rosser, 54 N.C. App. 660, 661, 284 S.E.2d 130, 131 (1981). "The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." United States v. Powell, 469 U.S. 57, 66, 83 L. Ed. 2d 461, 469 (1984). In Powell, the Court also noted that "a criminal defendant . . . is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." Powell, 469 U.S. at 67, 83 L. Ed. 2d at 470. Accordingly, we previously have stated that "[w]hen the evidence at trial is sufficient to support the jury's verdict, there is no abuse of discretion in the trial court's denial of defendant's motion to set aside the verdict." State v. Serzan, 119 N.C. App. 557, 562, 459 S.E.2d 297, 301 (1995), cert. denied, 343 N.C. 127, 468 S.E.2d 793 (1996).
Therefore, we review the evidence to determine whether it is sufficient to support the jury's verdict. Our Supreme Court has instructed that
[a]n accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power and intent to control its disposition or use. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. Also, the State may overcome a motion to dismiss or motion for judgment as of nonsuit by presenting evidence which places the accused "within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession."
State v. Harvey, 281 N.C. 1, 12-13, 187 S.E.2d 706, 714 (1972) (quoting State v. Allen, 279 N.C. 406, 411-12, 183 S.E.2d 680, 684 (1971)). The discovery of narcotics on premises under the exclusive control of the accused may be sufficient to take a case to the jury on a charge of unlawful possession, State v. Matias, 354 N.C. 549, 552, 556 S.E.2d 269, 270-71 (2001) ("Where [contraband] materials are found on the premises under the [exclusive] control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession."), but when the "possession of the premises is nonexclusive, constructive possession of the contraband materials may not be inferred without other incriminating circumstances." State v. Brown, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984).
In the case sub judice, the evidence shows that defendant purchased over-the-counter products containing pseudoephedrine, an ingredient used in the manufacture of methamphetamine, from two different drug stores on 26 January 2006, 7 March 2006, 12 April 2006, 19 May 2006, 20 June 2006, 28 June 2006, and 29 June 2006. Each time he made a purchase, defendant, an admitted methamphetamine consumer, gave his address as 363 Big Branch Road, Sugar Grove, North Carolina. Furthermore, defendant purchased pseudoephedrine with increasing frequency in late June 2006, less than one month prior to the law enforcement search of his mobile home. On 28 July 2008, law enforcement officers saw defendant leaving the residence at 363 Big Branch Road. Defendant attempted to flee when he saw the officers. Based upon this evidence a jury could reasonably find that defendant possessed the methamphetamine found in the jar.
We hold the court did not abuse its discretion by denying defendant's motion to set aside the verdict. Defendant's remaining assignments of error which are neither set forth in his brief nor argued on appeal are deemed abandoned pursuant to North Carolina Rules of Appellate Procedure, Rule 28(b)(6). N.C. R. App. P. 28(b)(6) (2007).
For the foregoing reasons, we hold no error.
No error.
Judges ROBERT C. HUNTER, and STEELMAN concur.
Report per Rule 30(e).