STATE OF NORTH CAROLINA v. JOE BRYANT, JOHN KNOLL, DON CHILDS and B. R. QUEEN

No. 162

(Filed 28 January 1972)

1. **Courts § 14; Obscenity— former obscenity statutes — preliminary determination of obscenity — jurisdiction of superior court**

Where defendants were charged with unlawful display of obscene literature for the purpose of sale in violation of [former] G.S. 14-189 and with dissemination of obscenity in violation of [former] G.S. 14-189.1, the superior court did not have jurisdiction to make a preliminary determination of whether materials seized at the time of defendants' arrest upon those charges were obscene and to order those items it determined to be obscene held pending defendants' trial in the

district court, since both statutes created misdemeanors for which the district court had exclusive orginial jurisdiction. G.S. 7A-271(a)(5); G.S. 7A-272.

**2. Criminal Law § 148— orders appealable — void preliminary determination of obscenity**

Defendants could appeal from a superior court order that determined that 95% of the materials seized from defendants were obscene and could be retained by the police pending trial of defendants in the district court for disseminating obscenity, where the order was void in toto because the superior court had no jurisdiction of the parties and subject matter. Ch. 405, Session Laws of 1971.

**3. Obscenity— charges under repealed obscenity statutes**

Defendants cannot be tried on warrants charging unlawful display of obscene literature for the purpose of sale in violation of [former] G.S. 14-189 and disseminating obscenity in violation of [former] G.S. 14-189.1, since those statutes were repealed as of 1 July 1971 and all prosecutions based upon them ended on that date.

APPEAL by defendants under G.S. 7A-30(1) from the decision of the Court of Appeals reported in 12 N.C. App. 530, 183 S.E. 2d 824.

The four defendants operate three book stores in the City of Raleigh. Queen and Bryant operate the Adult Book Store at 208 S. Wilmington Street; Knoll operates the J & J Book Store at 123 W. Martin Street; and Childs operates the J & J Book Store at 107 Fayetteville Street.

On 18 May 1971 defendants were arrested upon individual warrants issued from the District Court Division of the General Court of Justice in Wake County. Knoll, Childs, and Queen were separately charged with unlawfully exhibiting obscene literature for the purpose of sale in violation of G.S. 14-189 (1969). Bryant, Knoll, and Childs were each charged with unlawfully selling two or more specifically designated publications featuring sexual activities in violation of G.S. 14-189.1 (1969).

As an incident to the arrest of defendants upon these warrants, police officers in the City of Raleigh seized approximately 1,450 magazines, films, pictures and other items of merchandise from the J & J Book Store on Fayetteville Street; 1,755 such items from the Adult Book Store on Wilmington Street; and 790 similar items from the J & J Book Store on W. Martin Street. The inventory shows that a total of approximately 4,000 items were seized from the three stores. Many of the items taken

were duplicates; from ten to fourteen copies of some books were seized.

On 25 May 1971 a detective of the Raleigh Police Department swore out warrants in which he charged that in violation of G.S. 14-189.1 each defendant did, on 18 May 1972, unlawfully "offer for sale obscenity" as indicated by the "inventory hereto attached." This inventory listed the items which the police had seized from the respective stores on 18 May 1971.

On 19 May 1971, the day following defendants' arrest and the seizure of the material from their stores, the solicitor of the Tenth District and the State's Attorney General filed with Judge Edward B. Clark, one of the judges presiding in the Superior Court of Wake County, a "motion for injunction hearing." The motion stated that "an adversary proceeding to determine preliminarily the obscenity of the materials held is necessary in order to afford the defendants due process in the further retention of the seized materials. . . ." Judge Clark granted the motion and conducted a hearing on 25 May 1971, at which both the State and defendants offered evidence, made oral arguments, and submitted written briefs. Thereafter Judge Clark examined all the items seized in the three stores. On 2 June 1971 he entered an order in which he found, *inter alia,* that the materials taken constituted "substantially the entire inventories" of the three stores; that the items on the list by which he had placed an *X* were obscene; that those he had marked *Return* were not obscene. Less than five percent of the items seized were marked *Return.*

Judge Clark held as a matter of law that the Superior Court had jurisdiction of the parties and the subject matter; that the seizure of the materials from the stores "was proper, lawful and not unconstitutional"; that all items marked *X* were obscene and that those marked *Return* were not. Pending the trial of defendants upon the warrants charging them with the dissemination of obscenity, or further orders "by a Court having jurisdiction over the parties and the subject matter," he ordered the Raleigh Police Department to hold as evidence the items marked *X*. The items marked *Return* he ordered delivered to the operator of the store from which they were taken.

Defendants excepted to the findings of fact and conclusions of law and appealed to the Court of Appeals. In an opinion filed

20 October 1971 that court dismissed the appeal upon the grounds that Judge Clark's Order Retaining Evidence was interlocutory and did not impair any substantial right of appellants; that the seizure of the defendants' merchandise was lawful and they had been afforded their constitutional rights by the adversary hearing which Judge Clark conducted.

Defendants appealed to this Court on the ground that a substantial constitutional question had been decided adversely against them. At the same time they petitioned for certiorari under G.S. 7A-27(d)(1) (1969). The Attorney General moved to dismiss the appeal and resisted the petition for certiorari. On 9 December 1971 we denied the motion to dismiss and allowed certiorari.

*Attorney General Morgan, Assistant Attorney General Denson for the State.*

*Smith and Patterson and Michael K. Curtis for John Knoll and Don Childs, defendant appellants.*

*Earle R. Purser for Joe Bryant and B. R. Queen, defendant appellants.*

SHARP, Justice.

Appellants argued in the Court of Appeals that the items seized, "based on their content and on the manner in which they were distributed and offered for sale, are not obscene." However, no exhibits were made a part of their case on appeal. The Court of Appeals did not consider this question and, in this Court, appellants do not argue it.

Here, defendants pose three interlocking questions: (1) Could the State constitutionally seize "substantially the entire inventories" of defendants' three stores as an incident to their arrest upon charges of disseminating obscenity *prior* to a judicial determination that the materials seized were obscene? (2) Did the Superior Court have jurisdiction to make a preliminary determination whether the material seized at the time of defendants' arrest was obscene and to order those items it determined to be obscene held until defendants' trial in the District Court upon the pending charges? (3) Do defendants have a right to appeal from Judge Clark's "interlocutory order"?

The answer to question (3) is that an appeal will lie if Judge Clark's order "may destroy or impair or seriously imperil some substantial right of the appellant." *State v. Childs,* 265 N.C. 575, 578, 144 S.E. 2d 653, 655. Indubitably, if "substantially the entire inventories" of defendants' three stores were *unlawfully* seized in violation of the constitutional guaranty against unreasonable searches and seizures, Judge Clark's order, which directed the Raleigh Police Department to retain ninety-five percent of the seized items pending final determination of the charges against defendants, would destroy, impair, or seriously imperil their substantial rights. Furthermore, if Judge Clark had no jurisdiction of the parties and the subject matter, his order was void in toto. In either event defendants would be entitled to appeal, and the dismissal of their appeal would be error.

The question whether police officers may make a massive seizure of reading materials, pictures or films *before* their obscenity has been established in a properly constituted adversary hearing is a serious one indeed. See *A Quantity of Books v. Kansas,* 378 U.S. 205, 12 L.Ed. 2d 809, 84 S.Ct. 1723 (1964) and cases therein cited; *Freedman v. Maryland,* 380 U.S. 51, 13 L.Ed. 2d 649, 85 S.Ct. 734 (1965). However, we do not reach that constitutional question because Judge Clark had no jurisdiction to make the order from which defendants appealed.

[1] The prosecution of defendants was instituted under G.S. 14-189, which, *inter alia,* made it unlawful to display obscene literature for the purpose of sale, and G.S. 14-189.1, which made it unlawful to disseminate obscenity knowingly and purposely. Both statutes created misdemeanors, for which "the district court has exclusive, original jurisdiction." G.S. 7A-272 (1969). Until defendants were tried and convicted in the District Court and appealed to the Superior Court for a trial *de novo* that court had no jurisdiction of the cases. G.S. 7A-271(a)(5) (1969).

Seemingly the solicitor and the Attorney General, both of whom signed the motion in which Judge Clark was requested to make a "preliminary adjudication of obscenity," anticipated G.S. 14-190.2 (Supp. 1971). However, this statute, which is a part of Chapter 405 of the Session Laws of 1971, did not become effective until 1 July 1971, twenty-eight days after Judge Clark made his order. Furthermore, Section (a) of G.S. 14-190.2

states that its purpose "is to provide an adversary determination of the question of whether books, magazines, motion pictures or other materials are obscene *prior to their seizure.*" (Italics ours.) Clearly, this statute evidences the legislative intent to prevent wholesale seizures such as occurred here *prior* to an adversary judicial determination that the materials seized were obscene. Section (c) requires that any law enforcement officer who has reasonable ground to believe that obscenity is being disseminated in a public place "shall, *without seizing such material,* notify the solicitor for the judicial district. . . . " Section (h) makes it clear that G.S. 14-190.2 does not prohibit a law enforcement officer "from seizing for evidentiary purposes *single copies* of . . . printed material which he reasonably believes to be obscene within the meaning of G.S. 14-190.1, when such seizure is made pursuant to a lawful arrest." (Emphasis added.)

[2]	The Attorney General argues in his brief (1) that Judge Clark's order determining that he had jurisdiction of the cause, that the items seized were obscene, and that the seizure was lawful, "was a mere interlocutory order" not binding on the trial court and, therefore, not presently appealable even if erroneous; and (2) that a defendant's remedy at this point is to note his exception and perfect his appeal along with the appeal of the case in event of conviction." This argument is patently without merit. Judge Clark's order is void in toto, and defendants' right to have it so declared may not thus be delayed.

[3]	Finally, the property in suit was seized as an incident to defendants' arrest on warrants upon which they cannot now be tried. These warrants charge offenses created by G.S. 14-189 and G.S. 14-189.1 (1969). Chapter 405 of the Session Laws of 1971 repealed these statutes as of 1 July 1971, and all pending prosecutions based upon them ended on that date. *State v. McCluney, ante,* p. 404; *State v. Pardon,* 272 N.C. 72, 157 S.E. 2d 698, and cases therein cited.

The decision of the Court of Appeals is reversed, and this cause is remanded to that court to the end that it direct the Superior Court to vacate the order of Judge Clark made in this case and enter an order releasing the materials described therein to the defendants.

However, we are constrained to point out that the order releasing the material seized will constitute no adjudication that it is not obscene. If defendants thereafter intentionally disseminate any part of it in a public place the question of obscenity may be determined in proceedings instituted under G.S. 14-190.1 or G.S. 14-190.2 (Supp. 1971), statutes which have been in effect—and available for that purpose—since 1 July 1971.

Reversed and remanded.