STATE OF NORTH CAROLINA v. WILLIE LEE O'NEAL

No. 832SC269

(Filed 6 March 1984)

1. **Criminal Law § 128.2— motion for mistrial—retroactive allowance after trial
   had ended**

   Where defendant made a second motion for mistrial during a second
   degree murder case on the ground that the jury could not agree within a
   reasonable time, the jury thereafter returned a verdict finding defendant
   guilty of voluntary manslaughter, and five days later defendant filed a motion
   for appropriate relief seeking a new trial because the court erroneously in-
   structed the jury on the issue of the use of excessive force, the trial court ex-
   ceeded its authority in thereafter retroactively allowing defendant's motion for
   a mistrial because the jury could not agree within a reasonable time. G.S.
   15A-1061; G.S. 15A-1062; G.S. 15A-1063.

2. **Criminal Law § 126.3— acceptance of verdict**

   The trial court accepted the jury's verdict when it received the jury's
   answers to six of the seven special issues submitted, later received the jury's
   answer to the seventh special issue, and continued sentencing until the follow-
   ing week.

**3. Criminal Law §§ 26.3, 177— remand for retrial of one issue—double jeopardy**

Where the jury in a second degree murder case, in returning a verdict of guilty of voluntary manslaughter, properly answered six of the seven special issues submitted to it, but the trial court erred in its instructions on the seventh issue as to whether defendant used excessive force, a new trial will be granted only on the issue of excessive force. Furthermore, a retrial on the untainted issues would violate defendant's right against double jeopardy under the doctrine of collateral estoppel.

APPEAL by defendant from *Bruce, Judge.* Order entered 13 October 1982, in Superior Court, BEAUFORT County. Heard in the Court of Appeals 14 November 1983.

Defendant, Willie Lee O'Neal, was indicted on a single count of murder, and the State elected to try him for second degree murder. Defendant, a police officer who was off duty at the time of the shooting, did not deny shooting the deceased, but presented evidence that the deceased fired and that he fired only in self-defense.

The case was originally submitted on a general verdict form. After three hours of deliberation, the jury returned to ask a question about the law. Then, after a lunch break, the court submitted an additional special verdict form containing seven issues. Some two and one-half hours later, the jury returned, stating they had answered six issues but could not agree on the seventh. The court instructed them to resume deliberations.

An hour and one-half later defendant moved for a mistrial because the jury could not agree within a reasonable time. The court denied the motion. Twenty minutes later defendant unsuccessfully renewed his motion. The jury then returned and indicated it still was unable to agree on the remaining issue. The court thereupon took its verdict with the following result:

The jury answered the questions in open court as follows:

1. Yes

2. Yes

3. No

4. No

5. No answer

State v. O'Neal

6. No

7. Yes

The unanswered issue was whether or not defendant had used excessive force. The court then erroneously instructed the jury on the issue, telling them that defendant had a duty to retreat and not use deadly force unless the retreat itself would endanger him. Twenty minutes later the jury reached a unanimous verdict that defendant had used excessive force. Accordingly, they returned a verdict of guilty of voluntary manslaughter. Sentencing was continued to the following week.

Five days later defendant filed a motion for appropriate relief, asking that the verdict on the last issue be set aside and that the court grant a new trial solely on that issue. The court found facts as outlined above, including a finding that the last instruction was erroneous. It concluded that its order denying defendant's second motion for mistrial "was contrary to law," and that defendant was entitled to a mistrial at that time. The court therefore declared a mistrial and granted a new trial on all issues; concluding that by making his motion for mistrial, defendant waived his right to plead former jeopardy at the new trial. From this order defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*Gaskins, McMullan & Gaskins, P.A., by Herman E. Gaskins, Jr., for defendant appellant.*

JOHNSON, Judge.

Although this appeal is interlocutory, in that no final judgment was entered, we have elected in our discretion, and in aid of our jurisdiction, to treat the "appeal" as a petition for writ of certiorari and proceed to address the merits of the case. G.S. 7A-32(c); App. R. 21(a); *Ziglar v. Du Pont Co.*, 53 N.C. App. 147, 280 S.E. 2d 510, *disc. review denied*, 304 N.C. 393, 285 S.E. 2d 838 (1981).[1]

---

1. As discussed *infra*, we hold that the trial court had no authority to declare a mistrial when it did. Therefore, mandamus would also lie. G.S. 7A-32(c); App. R. 22; *State v. Surles; State v. Barnes; State v. Williams & State v. Sutton*, 55 N.C. App.

I

[1]   We hold first that the court exceeded its authority in declaring the mistrial over defendant's objection. G.S. 15A-1061 empowers the trial court to declare a mistrial "Upon motion of a defendant or with his concurrence. . . ." Defendant's motions for a mistrial were made before the jury first announced its verdict (with six of seven issues answered). Defendant contended in his motions that the jury was apparently unable to agree within a reasonable time. The court denied both motions. Then the jury returned its verdict, first with the unanswered issue and then with all issues answered. To retroactively declare a mistrial, after the jury had returned a verdict which even with the erroneous finding amounted to an acquittal on the murder charge, goes far beyond any concurrence which may be implied from the motions themselves. To do so ignores the very purpose of defendant's motions. Defendant's limited motion for a new trial also cannot be construed as concurrence to a general declaration of a mistrial and a new trial on all issues.

In addition, the court may exercise its power under G.S. 15A-1061 only "during the trial." Here, the court expressly found that 11 motions for mistrial made by defendant *during the course of the trial* were denied. Thus, it is evident that the court lacked authority to declare a mistrial under G.S. 15A-1061. Although the court did not specifically refer to this section in its order, by ruling that defendant waived his right to raise former jeopardy by making his motions, it may be inferred that the court looked to this section for its authority, and thereby erred. Furthermore, the State did not move for a mistrial. The record reveals no misconduct sufficient to trigger the State's right to make such a motion. The court therefore had no authority to declare a mistrial under G.S. 15A-1062.

G.S. 15A-1063 allows the court to declare a mistrial on its own motion, if "(1) It is impossible for the trial to proceed in conformity with law; or (2) It appears there is no reasonable probability of the jury's agreement upon a verdict." Although it may have appeared at one point that there was no reasonable probability for the jury reaching agreement, the court gave addi-

179, 284 S.E. 2d 738 (1981), *disc. review denied,* 305 N.C. 307, 290 S.E. 2d 707 (1982). We grant certiorari to more fully review the complex issues involved.

tional instructions and the jury did in fact reach a verdict. The fact that part of that verdict was tainted by an erroneous instruction does not justify a mistrial. Nor does this appear to be one of the "limited number of situations" where further proceedings are impossible. *See* G.S. 15A-1063, Official Commentary. No deaths or natural catastrophes occurred during the trial, *id.*; no juror became intoxicated, *see State v. Tyson*, 138 N.C. 627, 50 S.E. 456 (1905); or insane, *see State v. Beal*, 199 N.C. 278, 154 S.E. 604 (1930); the court was not incapacitated, *see State v. Boykin*, 255 N.C. 432, 121 S.E. 2d 863 (1961); no tampering took place, *see State v. Cooley*, 47 N.C. App. 376, 268 S.E. 2d 87, *disc. review denied and appeal dismissed*, 301 N.C. 96, 273 S.E. 2d 442 (1980). In short, nothing occurred which justified an order of mistrial for impossibility. We, therefore, conclude that the court had no authority under any section of the Criminal Procedure Act to order a mistrial.[2]

We also find no justification for the court's declaration of mistrial five days after the jury had been discharged. The obvious purposes of mistrial are to prevent prejudice arising from conduct before the jury and to provide a remedy where the jury is unable to perform its function. Once the court has discharged the jury, there is no purpose in ordering a mistrial: the proceedings may be determined by rulings of the court on matters of law, including new trial motions. The retroactive declaration of a mistrial upon reconsideration has no valid basis in policy or law. *See State v. Aldridge*, 3 Ohio App. 3d 74, 443 N.E. 2d 1026 (1981) (vacating order reviving and granting a previously denied defense motion for mistrial); *State v. Carey*, 290 A. 2d 839 (Me. 1972) (appellant "in no position" to urge motion for mistrial retroactively after verdict). This practice, if allowed, would impermissibly place a defendant who made *any* mistrial motion at *any* time in peril, subject to the unlimited discretion of the trial court, of losing his constitutional right to not be twice put in jeopardy for the same offense.

Since the trial court had no authority to declare a mistrial, its order is void and must be vacated. *State v. Bryant*, 280 N.C. 407, 185 S.E. 2d 854 (1972) (no jurisdiction or statutory basis for

---

2. G.S. 15A-1235(d) allows declaration of a mistrial on the same grounds as G.S. 15A-1063(2); G.S. 15A-1224 also provides for mistrial on death or disability of the trial judge.

order; vacated); *Insurance Co. v. Johnson*, 41 N.C. App. 299, 254 S.E. 2d 643 (1979) (no authority to correct legal error under G.S. 1A-1 Rule 60(a); order vacated).[3]

## II

The court ordered a new trial on all issues, although defendant moved for a new trial only as to the one "tainted" issue. Here, special issues were submitted to the jury, as has long been acceptable (though not recommended) practice in criminal trials in this state. *See State v. Ellis*, 262 N.C. 446, 137 S.E. 2d 840 (1964); *State v. Belk*, 76 N.C. 10 (1877).[4] The court "took" the jury's verdict when it returned the third time, receiving answers to six of the seven issues. It then gave the erroneous instruction and shortly thereafter received the seventh answer. Sentencing was postponed; five days later defendant made his limited new trial motion.

## A

**[2]**  The State argues that the court did not "accept" the jury's verdict; therefore defendant has no right to it, and accordingly a new trial on all issues is proper. In *State v. Hampton*, 294 N.C. 242, 247-48, 239 S.E. 2d 835, 839 (1978), the Supreme Court discussed the circumstances under which the trial court must accept a verdict:

> A verdict is a substantial right and is not complete until accepted by the court. *State v. Rhinehart*, 267 N.C. 470, 148 S.E. 2d 651 (1966). The trial judge's power to accept or reject a verdict is restricted to the exercise of a limited legal discretion. *Davis v. State*, 273 N.C. 533, 160 S.E. 2d 697 (1968). In a criminal case, it is only when a verdict is not responsive to the indictment or the verdict is incomplete, insensible or repugnant that the judge may decline to accept the verdict and direct the jury to retire and bring in a proper verdict.  .

---

3. Arguably, the court's order could be treated as a new trial order. However, since the new trial issue is treated separately, we do not discuss this question here.

4. The court also submitted a general verdict; however, where special issues are used, no general verdict should be submitted, but the court should announce its conclusion of law as to innocence or guilt based on the jury's findings. *State v. Ellis, supra.*

> Such action should not be taken except by reason of necessity. If the verdict as returned substantially finds the question so as to permit the court to pass judgment according to the manifest intention of the jury, it should be received and recorded.

The criminal cases governing this situation do not include special issues answered separately, or continued sentencing. But the court here could easily have passed judgment on the issues as answered. The fact that sentencing was continued does not detract from the finality of the jury's findings. Nothing before us suggests that the verdict itself, and especially the answers to the first six issues, was "not responsive" or "incomplete, insensible or repugnant." The underlying error of law may have tainted one of the answers, but retroactive refusal to accept the verdict is not the proper method of curing the defect. We also note that the presence or absence of formal words of acceptance does not determine this question. *See State v. Caudle*, 58 N.C. App. 89, 293 S.E. 2d 205 (1982), *cert. denied*, 308 N.C. 545, 304 S.E. 2d 239 (1983).

We therefore conclude that nothing justified the exercise of the court's "limited legal discretion" to reject the verdict and that by "taking" it and postponing sentencing, the court did in fact "accept" it.

B

[3] The court found as a fact that the instruction on excessive force was erroneous. We agree. *See State v. Spaulding*, 298 N.C. 149, 257 S.E. 2d 391 (1979). In this case, defendant has clearly met his burden of establishing prejudice, and a new trial is required. *State v. Carver*, 286 N.C. 179, 209 S.E. 2d 785 (1974). Since, however, the jury has heard the evidence, deliberated, and without error returned a verdict as to the other six issues, no new trial is required on these issues. Neither the State nor defendant is entitled to one. *State v. Ellis, supra* (paternity and nonsupport issues; error as to nonsupport issue did not entitle defendant to new trial on paternity issue).

C

In addition, to grant a new trial on all issues would violate a fundamental constitutional right of defendant. The right to not be

twice put in jeopardy for the same offense "is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence." *State v. Crocker,* 239 N.C. 446, 449, 80 S.E. 2d 243, 245 (1954). It has always been an integral part of the law of North Carolina, now guaranteed by Art. I, § 19 of the Constitution. *State v. Battle,* 279 N.C. 484, 183 S.E. 2d 641 (1971). The Fifth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, also guarantees this right. *Benton v. Maryland,* 395 U.S. 784, 23 L.Ed. 2d 707, 89 S.Ct. 2056 (1969). It is a substantial right, fundamental to the American scheme of justice.

In *Ashe v. Swenson,* 397 U.S. 436, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970), the United States Supreme Court held that this right included the doctrine of "collateral estoppel," which precludes relitigation of issues of ultimate fact. Although *Ashe* does technically require a "valid and final judgment," it dealt only with general verdicts, and the rules of construing them. In a case like this, where a large number of special issues are submitted, and error is committed only as to one, we see no reason to apply this rule in defendant's case.[5] As the Supreme Court cautioned in *Ashe,* "[T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* at 444, 25 L.Ed. 2d at 475, 90 S.Ct. at 1194. Realism and rationality require us to hold that retrial on the untainted issues would violate the rule and thus defendant's constitutional right. Defendant came before the court of justice, both sides presented their evidence, and the jury deliberated and pronounced its verdict as to six of seven issues. After a clearly erroneous instruction, the jury pronounced its verdict on the seventh. The court was ready to sentence defendant based on these findings. Defendant has shown that the erroneous instruction entitles him to a new trial. In fairness he should not have to "run the gauntlet" again from the beginning. We believe a retrial on all issues, in the limited circumstances before us, is too harsh a result.

We conclude, then, that defendant is entitled a new trial, limited to the one issue of whether or not he used excessive force

---

5. The rationale for a less restrictive view of what are "final" judgments is well explained in 1B Moore's Federal Practice, § 0.441[4] (1983).

in his defense. The court will be able, with the jury's answer to that question, to pass judgment as a matter of law on defendant's innocence or guilt.

## III

The jury found as fact that although defendant intentionally shot the deceased and thus proximately caused his death, he did so in the reasonable belief that the shooting was necessary to protect himself from death or great bodily injury. It also found that defendant was not the aggressor and did not act in the heat of passion. Therefore, defendant has established at least an "imperfect" right of self-defense and can at most be convicted of voluntary manslaughter. *State v. Norris*, 303 N.C. 526, 279 S.E. 2d 570 (1981). Accordingly, the second degree murder charge must be dismissed.

## IV

In conclusion, we hold that the court's order of 13 October 1982 must be vacated and a new trial conducted. However, inasmuch as all issues except the issue of excessive force have been fully adjudicated, the new trial must be limited to that issue. We remand for further proceedings consistent with this opinion.

Vacated and remanded.

Chief Judge VAUGHN and Judge WELLS concur.