STATE OF NORTH CAROLINA
v.
LAURICE MILTON RAYNOR, JR., Defendant.
No. COA08-1490
Court of Appeals of North Carolina
Filed October 6, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.
Greene & Wilson, P.A., by Thomas Reston Wilson, for defendant-appellant.
GEER, Judge.
Defendant Laurice Milton Raynor, Jr. appeals his convictions of two counts of first degree rape, four counts of first degree sexual offense, and two counts of second degree kidnapping. Defendant primarily argues that the trial court erred by not definitively ruling prior to trial on his motion in limine to exclude certain evidence under Rule 404(b) of the Rules of Evidence. As our courts have repeatedly observed, a ruling on a motion in limine is a preliminary decision subject to change at trial. Although defendant contends that his attorney was hampered in cross-examining witnesses without a definitive pre-trial ruling because he was concerned about opening the door to the Rule 404(b) evidence, that potential would have existed even if the trial court had excluded the evidence in advance of trial. Had counsel opened the door, the trial court would have been free to revisit its motion in limine ruling and allow the admission of the evidence. We, therefore, hold that the trial court did not err with respect to the motion in limine. Because we also find defendant's remaining argument unpersuasive, we conclude that defendant received a trial free of prejudicial error.

Facts
At trial, the State's evidence tended to show the following facts. On 17 June 2001, "Amy," who was 15 years old, and her friend "Susan," who was 16 years old, were on vacation with Susan's family at Ocean Isle Beach, North Carolina.[1] That evening, the two girls went for a walk down the street. There were other young people out walking and cruising. Although most of the people looked like they were in their teens or early twenties, the girls noticed an older-looking man, maybe in his forties, driving a black Mazda pickup truck. He had driven around the loop several times while they were out walking.
At some point, the girls heard someone come up behind them and Amy felt the person bump into her shoulder. Turning, the girls saw a man  later identified as defendant  holding a marble or ivory-gripped gun in his right hand and holding his T-shirt over his nose with his left. Defendant motioned with the gun for the girls to get into the black Mazda pickup truck. Defendant told the girls to put their heads down between their legs, and he drove around for awhile in circles or making U-turns. At one point, Susan thought defendant said to sit up  she did so and was able to fully see defendant. He ordered her to lie back down, pulled out two pillowcases from behind the front seat, and put them over the girls' heads. He also handcuffed their hands behind their backs.
Defendant eventually pulled into an unpaved driveway and parked. Defendant got the girls out of the truck, walked them up some wooden steps, and took them inside a building. Defendant led them across a linoleum floor to another section of the building with carpet, where they could hear a television playing. Defendant forced the girls to lie down on their backs on the carpet with their handcuffed hands underneath them. He took off the pillowcases and tried to duct-tape their eyes shut, but Amy could see defendant under the bottom of the duct tape.
Defendant took off the girls' pants and underwear and raised or unhooked their bras. Defendant ordered Susan to perform oral sex on him. When Susan told defendant that she thought she was going to throw up, defendant threatened to shoot her. Defendant then got on top of Susan and engaged in vaginal intercourse. Defendant also performed oral sex on Susan.
Defendant then asked Amy if she had "ever been fucked." Amy began crying and told him that she was a virgin. Defendant threatened to shoot her if she did not stop whining. Although Amy could not remember in what order things happened, defendant licked and kissed Amy's right breast, performed oral sex on her, and engaged in vaginal intercourse.
Afterward, defendant wiped each girl's vagina with a wet washcloth and put the girls' clothes back on them with the exception of their underwear, which he kept. Defendant left the duct tape over the girls' eyes, placed the pillowcases back over their heads, and walked them outside to the truck. When in the truck, defendant ordered them to put their heads down. At one point, while driving, defendant took the pillowcases off and told Susan that if she performed oral sex on him, he would let them go. Susan, who was in the passenger seat, leaned over Amy in the middle seat and performed oral sex on defendant. Defendant then put the pillowcases back over the girls' heads.
Defendant eventually stopped in a grassy parking lot of a church, got the girls out of the truck, and told them to lie down in front of his truck. Because they were afraid defendant would drive over them, the girls refused, and defendant took off the pillowcases, duct tape, and handcuffs and ordered the girls at gunpoint to walk towards a wooded area away from the truck. When the girls were sure that defendant had driven off, they ran to a house with its lights on. The girls called Susan's father who was out looking for them with the police.
The girls were taken immediately to Brunswick Community Emergency Department. There, a nurse trained in conducting sexual assault examinations collected evidence from Amy and Susan. When Amy told the nurse that defendant had licked her right breast, the nurse took a swab from that area. The evidence was sent to the SBI for DNA analysis and indicated the presence of an unknown male's DNA on Amy's breast.
In 2006, detectives received information in another investigation that caused them to search a trailer located 35 to 40 minutes from Ocean Isle. Defendant had lived there from 3 March 2001 through 29 August 2001. They subsequently obtained a search warrant for defendant's current residence. While officers were executing the search warrant, defendant drove up. He agreed to allow the officers to take an oral swab of his mouth. The SBI determined that defendant's DNA matched the DNA found on Amy's breast. In addition, both Susan and Amy identified defendant as the man who had abducted them.
Also in 2006, Glenn Britt, a car salesman who regularly did business with defendant, called law enforcement and told them that he had sold defendant a black Mazda pickup truck in November 2000. He also told them that in 2000, after seeing the publicity about the kidnapping and rape of two girls by a man in a black Mazda pickup truck, he jokingly said to defendant that "they're looking for you and that black Mazda truck." According to Mr. Britt, defendant looked "shock[ed]" and responded that he had painted the truck white to match his other company trucks and then sold it. Mr. Britt thought that was odd since defendant had told him that he was buying the truck for personal use. Mr. Britt also told law enforcement that he knew defendant was separated from his wife in June 2001, defendant was living in the area near where the girls were released, and defendant normally carried a gun. A detective traced defendant's black Mazda pickup truck. The current certificate of title indicated that the vehicle was a white Mazda pickup truck and that title was transferred in Cumberland County on 31 August 2002.
On 8 March 2006, defendant was indicted for eight separate offenses. With respect to Amy, defendant was charged with one count each of first degree rape, first degree sexual offense, and first degree kidnapping. As for Susan, defendant was charged with first degree rape, three counts of first degree sexual offense, and first degree kidnapping.
At trial, defendant called his wife, Kathy Raynor, as a witness. She testified that she and defendant separated in February 2001 for four months. On 17 June 2001, which was Father's Day, she went with defendant, even though they were separated, to a family party about an hour and a half to an hour and 45 minutes away in Fayetteville. She and defendant left the party around 5:00 or 6:00 p.m. Defendant and his wife reconciled a few days later. Ms. Raynor admitted that when her husband was arrested in 2006 on the charges in this case, she sold defendant's gun collection within days. She testified that she needed the money.
Defendant's uncle, Michael Combs, testified that in early April 2001, he was having trouble with his heating and air conditioning. Mr. Combs knew that defendant wanted the black Mazda truck painted white to match his other work trucks, so when defendant dropped off repair materials for Mr. Combs' heating and air conditioning problem, Mr. Combs arranged for defendant's truck to be painted. Mr. Combs testified that he knew the truck was painted sometime around 10 April 2001 because he had written a check to defendant for the repair materials, and defendant had deposited the check on 10 April 2001.
The jury convicted defendant of all the charges. The trial court arrested judgment on the two first degree kidnapping convictions and imposed judgments on the lesser-included offense of second degree kidnapping. The court sentenced defendant to a presumptive-range term of 240 to 297 months for the first degree rape of Susan; a consecutive presumptive-range term of 240 to 297 months for the first degree rape of Amy; a consecutive presumptive-range term of 240 to 297 months for one count of first degree sexual offense of Susan; two presumptive-range terms of 240 to 297 months for one count of first degree sexual offense of Susan and one count of first degree sexual offense of Amy both running consecutively to the sentence for the prior count of first degree sexual offense of Susan; a presumptive-range term of 240 to 297 months for the third count of first degree sexual offense of Susan to run consecutive to the sentence for the second count of first degree sexual offense of Susan; a presumptive-range term of 25 to 39 months for second degree kidnapping of Susan to run consecutive to the sentence for the third count of first degree sexual offense of Susan; and a presumptive-range term of 25 to 39 months for the second degree kidnapping of Amy to run consecutive to the sentence for the kidnapping of Susan conviction. After sentencing, defendant moved for a mistrial, and the trial court denied the motion. Defendant timely appealed to this Court.

I
Defendant first argues on appeal that the trial court erred by failing to definitively rule on his motion in limine to exclude evidence pursuant to Rule 404(b) of the Rules of Evidence. Defendant had, prior to trial, requested that the trial court exclude evidence of alleged sexual misconduct by defendant with a 13-year-old girl in 2006. It was the investigation and publicity related to that charge, which had led to the search of the trailer, the search of defendant's home, the obtaining of the DNA swab, Mr. Britt's contacting the police, and Amy's identifying defendant by looking at a picture on the internet.
In response to defendant's motion, the trial court deferred ruling on the issue until trial:
THE COURT: What I was thinking of was simply just to  I don't know anything about this case, folks, other than what's in the indictments, and the court files that have been thrust up here about an hour and a half ago, and what y'all have said. And many times the relevancy and the admissibility of potential 404(b) evidence relates to whatever the course of the trial is and the testimony up to that point. What I was considering doing is simply asking you folks to just let me know when this issue comes forward and you want to put it in front of the jury. If you do I'll send the jury out and we'll hear whatever it is you want to do and then go from there.
At this point, defense counsel stated that he was "fine" with the trial court's decision. The State agreed not to mention the evidence in jury selection and in opening statements.
Defendant argues on appeal that the trial court's failure to rule on his motion in limine "substantially prejudiced" defense counsel's ability to cross-examine the State's witnesses as he "risk[ed] opening the door to the 404(b) evidence which had never been ruled upon." Defendant, however, fails to cite any authority requiring the trial court to rule conclusively on the admissibility of evidence prior to trial.
To the contrary, "[r]ulings on motions in limine are preliminary in nature and subject to change at trial, depending on the evidence offered . . . ." State v. Hayes, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (per curiam). Indeed, our Supreme Court has specifically upheld a trial court's refusal to rule on a motion in limine seeking to preclude the State from cross-examining the defendant on certain facts because, even though the evidence appeared inadmissible, "the trial court could not know if defendant would `open the door' to cross-examination about [those facts] until defendant testified." State v. White, 340 N.C. 264, 289, 457 S.E.2d 841, 855, cert denied, 516 U.S. 994, 133 L. Ed. 2d 436, 116 S. Ct. 530 (1995). See also State v. Lamb, 321 N.C. 633, 648, 365 S.E.2d 600, 608 (1988) ("The trial court, at these early stages, had no factual context in which to make a decision and properly deferred its ruling. The Rules of Evidence are not to be applied in a vacuum; they are to be applied in a factual context. A trial court makes its decisions as that factual context unfolds and as the circumstances warrant."). To the extent that defendant's argument is based on his contention that his counsel's cross-examination was less vigorous because of fears that he might open the door to the Rule 404(b) evidence, defendant has failed to demonstrate that the trial court erred in deferring its ruling on defendant's motion in limine.
Defendant, however, also argues that the trial court, by ruling question by question, was making a "very piecemeal ruling on the 404(b) issues [that] allowed for [the] State [to] gradually offer improper 404(b) evidence . . . ." The trial court, however, addressed each objection made by defendant's counsel and, in many instances, granted the relief sought by defendant, including giving a requested cautionary instruction to a witness. When defendant did not prevail on an objection, it was because he had opened the door to the evidence, a permissible basis for admitting the evidence. See State v. Albert, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981) ("[T]he law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially.").
The admission of other evidence related to the 404(b) issues was due to defendant's failure to object. It is fundamental that "'[a] motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial.'" Hayes, 350 N.C. at 80, 511 S.E.2d at 303 (quoting State v. Bonnett, 348 N.C. 417, 437, 502 S.E.2d 563, 576 (1998), cert. denied, 525 U.S. 1124, 142 L. Ed. 2d 907, 119 S. Ct. 909 (1999)). Thus, "a defendant must `object when the evidence that was the subject of the motion in limine [is] offered at trial . . . .'" State v. Reaves, ___ N.C. App. ___, ___, 676 S.E.2d 74, 77 (2009) (quoting Hayes, 350 N.C. at 80, 511 S.E.2d at 303). Defendant cannot, therefore, object on appeal to the admission of Rule 404(b) evidence when he failed to object to that evidence at trial.

II
Defendant next argues that the trial court erred in denying his motion for a mistrial. During the trial, Mr. Combs, defendant's uncle, testified that he knew that defendant had painted the truck white around 10 April 2001 because of a check  introduced into evidence  made out to defendant and deposited by defendant on that date. During closing arguments, the prosecutor argued that the check had been altered, pointing out that the check's bank account numbers appeared to have been whited-out and that the bank processing stamp showed that it had been processed on 20 April 2000, almost a year prior to the date written on the check by Mr. Combs.
After closing arguments, but before the jury was instructed, defense counsel informed the trial court in chambers that he believed the check had been altered and fraudulently offered as evidence. The court asked both defense counsel and the prosecutor whether they wanted to move to strike Mr. Comb's testimony, strike the exhibit, or for any other corrective action. Ultimately, neither defense counsel nor the prosecutor made any such motions. During the jury's deliberations, the jury asked to see defendant's uncle's check. Neither defense counsel nor the prosecutor objected to the evidence being sent back to the jury room for publication.
The jury returned its verdict on 1 July 2008. The trial court sentenced defendant the same date. Defendant filed his motion for a mistrial the next day, 2 July 2008. N.C. Gen. Stat. § 15A-1061 (2007) (emphasis added) provides that "[u]pon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial." Thus, based on the plain language of N.C. Gen. Stat. § 15A-1061, the trial court may "exercise its mistrial authority in a criminal matter only `during the trial[.]'" State v. Smith, 138 N.C. App. 605, 609, 532 S.E.2d 235, 238-39 (2000) (quoting N.C. Gen. Stat. § 15A-1061), disc. review improvidently allowed, 353 N.C. 355, 543 S.E.2d 477 (2001). "Once the court has discharged the jury, there is no purpose in ordering a mistrial[.]" State v. O'Neal, 67 N.C. App. 65, 69, 312 S.E.2d 493, 495, aff'd as modified on other grounds, 311 N.C. 747, 321 S.E.2d 154 (1984). As a result, after the jury has returned a verdict, a motion for a mistrial is untimely and should be denied by the trial court. See State v. McKenna, 289 N.C. 668, 689, 224 S.E.2d 537, 551 ("Defendant's motion for a mistrial was made after verdict and therefore came too late."), death sentence vacated, 429 U.S. 912, 50 L. Ed. 2d 278, 97 S. Ct. 301 (1976). Since defendant's motion for a mistrial was not made during the trial, but only after the jury had been discharged, it was untimely, and the trial court properly denied the motion.
No Error.
Judges BRYANT and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] The pseudonyms "Amy" and "Susan" are used throughout this opinion to protect the minors' privacy and for ease of reading.